IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ANNETTE KEATON WILLIAMS,

    Plaintiff,

v.                                                    CASE NO. 1:09-cv-00027-MP-AK

MICHAEL J. ASTRUE,

    Defendant.

_____/

**O R D E R**

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) under Title II and for supplemental security income benefits (SSI) filed under Title XVI of the Act. Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner is affirmed.

**A.**    **PROCEDURAL HISTORY**

Plaintiff filed applications for DIB and SSI on August 25, 2006, alleging a disability onset date of February 22, 2006, due to bilateral carpal tunnel syndrome. Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on March 17, 2008, and entered an unfavorable decision on April 17, 2008. The Appeals Council denied Plaintiff's request for review on January 9, 2009, thus making the decision of the ALJ the final decision of the Commissioner. This action followed.

## B.     FINDINGS OF THE ALJ

The ALJ found that Plaintiff had performed substantial gainful activity after the alleged onset date, and that she reported that she was working in December 2006 and such work would continue in 2007 with earnings of over $1000 per month. The ALJ nevertheless declined to dispose of the case at that step.

The ALJ determined that Plaintiff's medical records supported a conclusion that she had the following severe impairments: chronic left shoulder pain, carpal tunnel syndrome, hypertension, and depression. Plaintiff had been hospitalized for evaluation of chest pain in March 2006, but did not have significant coronary artery disease. Plaintiff was hospitalized in August 2007 for non-ST elevation myocardial infarction; her December 2007 treatment notes showed that she had a diagnosis of "insignificant coronary artery disease with 25% proximal right coronary stenosis."

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met the listings. The ALJ further found that Plaintiff's mental impairment did not meet the listings because such impairment did not result in at least two of the "paragraph B" criteria (marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation). In particular, Plaintiff had only mild restriction of activities of daily living. Her reported activities included caring for a grandchild, household chores, preparing meals, and driving. Plaintiff had moderate difficulties in social functioning. She reported having problems getting along with other people, and in October 2005 two of her children were removed from her home after she threatened to kill one of them. In June 2007, she

was jailed for 28 days for contempt of court. Plaintiff had moderate difficulties with concentration, and the evidence did not show that she had experienced any episodes of decompensation since the alleged onset date. The ALJ also found that the evidence failed to establish the presence of "paragraph C" criteria.[1] See 20 C.F.R. Pt. 404 Subpt. P, App. 1 (Listing 12.04).

The ALJ then translated the Paragraph B and C adult mental disorder listings into work-related functions in order to assess Plaintiff's residual functional capacity. In doing so, the ALJ considered conflicting psychological evaluations in Plaintiff's medical records. In October 2005, Dr. Valenstein evaluated Plaintiff for the Department of Children and Families and assigned Plaintiff a Global Assessment of Functioning (GAF)[2] score of 65. In September 2007,

---

[1] Listing 12.04 Para. C. states: "Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement."

[2] "The GAF scale reports a 'clinician's assessment of the individual's overall level of functioning.' American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 30 (4th ed.1994)." Sims v. Barnhart, 309 F.3d 424, 427 n. 5 (7th Cir.2002). A GAF score of 41-50 indicates: "Severe symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." A GAF score of 51-60 indicates: "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

Dr. Abeles evaluated Plaintiff at the request of the Disability Determination Service and assessed a GAF of only 50. The ALJ noted that a GAF of 50 "suggests serious symptoms and serious impairment in social and/or occupational functioning and an inability to keep a job." However, the ALJ gave greater weight to Dr. Valenstein's opinion because it was based on clinical testing, whereas Dr. Abeles performed no clinical tests. The ALJ further noted that the medical evidence of record did not support Dr. Abeles' opinion that Plaintiff suffered from psychotic disorder.

The ALJ determined that Plaintiff has the residual functional capacity to do the following: lift and carry 10 pounds frequently and 20 pounds occasionally; sit, stand or walk approximately six hours in an eight-hour workday with no pushing or pulling using lower extremities; avoid frequently ascending and descending stairs; should never climb ladders, rope, or scaffolds, but can occasionally balance, stoop, kneel, crouch and crawl; and perform activities requiring bilateral manual dexterity for both fine and gross manipulation with handling and reaching. The ALJ found that due to Plaintiff's moderate limitations in social functioning she is limited to simple, routine, low-stress work, with one, two, or three-step instructions, and not in close proximity to co-workers, as part of a team, or in direct contact with the general public. The ALJ determined that due to moderate pain, Plaintiff must avoid exposure to heights and hazardous machinery. R. 29-30.

In making this finding, the ALJ considered the nature and extent of Plaintiff's symptoms that were reasonably consistent with objective medical evidence and opinion evidence. R. 30. The ALJ determined that Plaintiff's subjective complaints of pain and limitation were not fully

---

See http:// psyweb.com/Mdisord/DSM_IV/jsp/Axis_V.jsp

credible because they conflicted with her self-described daily activities, her medical treatment had been conservative, and her complaints were not consistent with the objective medical evidence. The ALJ credited the report of Dr. Chodosh, who performed a consultative examination of Plaintiff for the Disability Determination Service, and opined that based on the objective evidence Plaintiff was able to sit, stand, walk, stoop, squat, kneel, lift, carry, and handle objects normally. R. 31.

The ALJ found that, based upon the testimony of a vocational expert, Plaintiff was unable to perform her past relevant work as a a food service worker and a cleaner/janitor. However, considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that jobs exist in significant numbers in the national economy that Plaintiff can perform. Accordingly, the ALJ determined that Plaintiff is not disabled. R. 32-33.

**C.    ISSUES PRESENTED**

Plaintiff argues that the ALJ erred at the second step of the disability determination by disregarding substantial competent evidence, in the form of Dr. Abeles' opinion, that Plaintiff suffers from a psychotic disorder. Plaintiff also argues that the ALJ failed to consider her impairments (including psychotic disorder) in combination. Doc. 15. In response, the Government argues that the ALJ applied the appropriate analysis in affording Dr. Abeles' opinion "little weight" and finding that the medical evidence of record did not support a diagnosis of psychotic disorder. The Government also argues that the ALJ did not err in failing to consider psychotic disorder in combination with Plaintiff's other impairments because the ALJ properly determined that psychotic disorder was not a severe impairment for Plaintiff, and the ALJ properly considered the combined effect of Plaintiff's credible impairments in assessing

her residual functional capacity. Doc. 18.

The issue thus presented is whether the Commissioner's decision that Plaintiff is not disabled, and specifically the decision that Plaintiff is not severely impaired by psychotic disorder, is supported by substantial evidence in the record and is based on proper legal standards.

**D.      STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam). It is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996). The Court must determine only whether substantial evidence supports the findings of the Commissioner. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).

Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that Plaintiff is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary. Plaintiff bears the burden of establishing a severe impairment that keeps her from performing her past work. If Plaintiff establishes that her impairment keeps her from her past work, the burden

shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, Plaintiff must prove that she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

### E. SUMMARY OF PLAINTIFF'S RELEVANT MEDICAL HISTORY

Plaintiff's claims center on evaluations by two mental health professionals, Dr. Valenstein and Dr. Abeles. During the examination of Plaintiff in October 2005, at the behest of the Department of Children and Families, Dr. Valenstein administered the reading subtest of the Wide Range Achievement Test 3, the Personality Assessment Inventory, the Child Abuse Potential Inventory, and Parenting Stress Index. Dr. Valenstein noted that Plaintiff interacted in a defensive and hostile manner, displayed a restricted range of affect, and appeared stressed. Dr. Valenstein concluded that Plaintiff was likely to be suspicious and hostile in relations with others, and would have difficulty finding supportive relationships. However, Dr. Valenstein found that Plaintiff was alert, oriented, and well groomed, and did not display pain behavior. Dr. Valenstein found no suggestion of articulation problems, and Plaintiff's speech was of normal rate and rhythm. There was no evidence of word finding problems or paraphasia; Plaintiff's fine motor control appeared to be within normal limits; she displayed normal eye contact; her attention and concentration were average; her immediate, recent and remote memory seemed

intact; she denied suicidal thoughts; and there was no indication of delusional thinking, compulsions, obsessive thoughts, persistent and irrational fears, or unusual perceptual phenomena. Dr. Valenstein opined that the results of her examination of Plaintiff supported the following DSM IV diagnosis:

| | |
|---|---|
| AXIS I | Adjustment Disorder with Mixed disturbance of emotions and conduct |
| AXIS II | provisional, Personality Disorder NOS with paranoid features |
| AXIS III | high blood pressure, high cholesterol, migraines |
| AXIS IV | financial strain, lack of social support, removal of children from her care |
| AXIS V | 65 [Global Assessment of Functioning] |

R. 140-47.

Dr. Abeles examined Plaintiff in September 2007, upon referral from the Office of Disability Determinations. Dr. Abeles did not administer any clinical tests to Plaintiff. Dr. Abeles noted that Plaintiff was openly hostile, but she was oriented to all spheres, appropriately dressed and groomed, and her immediate and recent memories appeared intact. She could not name the current President of the United States. Dr. Abeles opined that Plaintiff's "judgment abilities appeared somewhat impulsive and her verbal reasoning abilities appear overly impulsive." It appeared to Dr. Abeles that Plaintiff's cognitive functioning was adversely affected by mental illness. Dr. Abeles noted that Plaintiff denied paranoid ideation, "despite expressing such." Plaintiff denied auditory or visual hallucinations, but gave an odd, *non sequitur* response when asked about hallucinations. Dr. Abeles concluded that Plaintiff suffered from a "serious mental condition," and appeared to be suffering from "a thought disorder and appears to be preoccupied with religious matters." Dr. Abeles opined that Plaintiff's level of functioning would prevent her from obtaining or maintaining employment, though with

treatment she might be able to work in the future.  Dr. Abeles offered the following DSM IV diagnosis:

| | |
|---|---|
| AXIS I | 298.9 Psychotic Disorder NOS (provisional) |
| AXIS II | Deferred |
| AXIS III | Claimant Reports Heart Disease, History of Heart Attack, Arthritis, Carpal Tunnel Syndrome, Gout, Problems with Left Knee, Sinus Condition, Migraine Headaches |
| AXIS IV | Unemployment |
| AXIS V | GAF = 50 (Current) |

R. 215A-217.

## F.  SUMMARY OF THE ADMINISTRATIVE HEARING

Plaintiff was 48 years old at the time of the hearing and had completed two years of college.  Plaintiff testified that her anxiety and depression caused her to keep to herself, and that she cannot deal with stress and does not want to feel embarrassment.  She testified that she keeps to herself other than going to work, or visiting some friends and family.  She testified that she was currently working as a dishwasher in the patient food service department of UF/Shands, and that to keep down on confusion and confrontation she worked by herself.  She testified that she had confrontations with people at work in which she threatened them with calling 911 or a person in authority.  When asked whether she had trouble getting along with people, Plaintiff responded "That's not true from my standpoint of view, but I was just told recently I come off as a negative person.  To avoid confrontation, I just tell them what I have to say and I just walk off.  And if they threaten me, I tell them I'm calling the law."  Plaintiff's representative subsequently noted for the record that Plaintiff was in a "trial work period."  R. 327-48.

## G.   DISCUSSION

Plaintiff contends that she should have been found to have the severe impairment of psychotic disorder at Step Two of the ALJ's analysis, and that the ALJ improperly afforded little weight to Dr. Abeles' diagnosis of psychotic disorder because Dr. Abeles did not perform clinical testing. However, an ALJ "is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). In this instance, the ALJ's rejection of Dr. Abeles' opinion is supported by substantial evidence in the form of Dr. Valenstein's diagnosis, which was based on clinical testing that Dr. Abeles did not perform. See 20 C.F.R.§§ 404.1527(d)(3)-(4), 416.927(d)(3)-(4) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and *laboratory findings*, the more weight we will give that opinion. . . . Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.") (emphasis added). As the Government points out, only two months after Dr. Abeles made her provisional diagnosis of psychotic disorder, Plaintiff was examined by Katherine Brazzale, M.D., and the only chronic mental problems noted in the course of that examination were anxiety and depression. R. 299-300. At the hearing, Plaintiff only testified to her symptoms of anxiety and depression. R. 332.

Dr. Valenstein's evaluation of Plaintiff, supported by clinical testing, provides substantial evidence for the ALJ's determination at the second step that Plaintiff is not severely impaired by psychotic disorder. As noted above, the record as a whole is more consistent with Dr. Valenstein's opinion than with Dr. Abeles' diagnosis, and Plaintiff points to nothing in the record that would support a contrary conclusion. Further, because the ALJ properly determined

that the provisional diagnosis of psychotic disorder was entitled to little weight, there was no basis for the ALJ to include psychotic disorder in considering Plaintiff's impairments in combination.

Accordingly, it is

**ORDERED AND ADJUDGED:**

The decision of the Commissioner denying benefits is **AFFIRMED**

**DONE AND ORDERED** this  *30th*  day of March, 2010

*s/Maurice M. Paul*
Maurice M. Paul, Senior District Judge